IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES HARDY,** *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| **THEODORE JOHNSON** *et al.*, *Defendants* | : : | No. 22-4419 |

# MEMORANDUM

PRATTER, J.                                                                                      OCTOBER 30, 2023

Due to an error in calculating his minimum sentence, Charles Hardy was called into a Pennsylvania Parole Board Office while he was out on parole. Mr. Hardy was then mistakenly reincarcerated though he committed no violation. Seeking relief under 42 U.S.C. § 1983, Mr. Hardy claims that his Fourth, Eighth, and Fourteenth Amendment rights were violated by the individual members of the Pennsylvania Parole Board and the individual parole agents responsible for the events that transpired that day. The Board Officer Defendants filed a Motion to Dismiss, asserting that the Complaint failed to establish their personal involvement in depriving Mr. Hardy of his federally protected rights.

Mr. Hardy alleges separate § 1983 claims against Secretary of Corrections John Wetzel and SCI-Coal Township Superintendent Tom McGinley. Secretary Wetzel and Superintendent Tom McGinley have also moved to partially dismiss the Complaint, arguing that it fails to allege their personal involvement or deliberate indifference.

In his allegations, however, Mr. Hardy has not sufficiently pled that the Board Officer Defendants or Secretary Wetzel were aware of the risk of reincarceration or deliberate indifference to that risk. Additionally, Mr. Hardy has not sufficiently alleged that Superintendent McGinley

1

had contemporaneous knowledge of and acquiescence of the offending incident. Though the Court grants the motion to dismiss as to the Board Defendants and Department of Corrections Defendants, Mr. Hardy may file an amended complaint.

## BACKGROUND

In 2018, Mr. Hardy pleaded guilty to retail theft charges in the Chester County Court of Common Pleas and received a sentence of two to four years in prison followed by three years of probation. After serving two years and two months, Mr. Hardy was released on parole on March 31, 2020, under the care of Parole Agent Schnitzer. His parole lasted until December 17, 2020, during which he fully complied with all parole conditions and did not commit any known violations

On December 16, 2020, Parole Agent Schnitzer asked Mr. Hardy to report to the Pennsylvania Parole Board Sub-Office in Norristown, PA to sign paperwork the next day at 8:30 a.m. However, upon arrival, Mr. Hardy was unexpectedly handcuffed and taken into custody without being informed of the reason for his arrest by Parole Agent Williamson and two unidentified female agents. He was then transported to the State Correctional Institution in Coal Township, PA by another Parole Board employee.

Upon arrival at the correctional facility, the transporting Parole Board employee did not provide any documentation but verbally stated that Mr. Hardy had been released early and should be incarcerated as a re-entrance. The intake officers accepted Mr. Hardy for incarceration at SCI-Coal Township without a court order or lawfully issued commitment.

During his time at SCI-Coal Township, Mr. Hardy was not allowed to make phone calls for six weeks. He sent written inquiries to Coal Township Superintendent Tom McGinley and other officials regarding his arrest but received only one response, which allegedly stated that he was not listed in their records and that he was classified as a reentry with no parole violation. Mr. Hardy

sought legal assistance and filed a complaint in the Commonwealth Court of Pennsylvania to secure his immediate release.

On March 31, 2021, Judge Renée Cohn Jubelirer presided over Mr. Hardy's hearing. It was conclusively demonstrated during the hearing that Mr. Hardy had not violated parole and that there was no justification for his reincarceration. Testimony from Ms. Cara Sheffield, Chief of Case Analysis for the Parole Board, revealed that the Pennsylvania Department of Corrections had provided an inaccurate status sheet to the Parole Board, and the time sheet failed to reflect Mr. Hardy's correct minimum sentence and parole eligibility date. The Parole Board did not verify the accuracy of the sheet. As a result of the hearing, Mr. Hardy was released from the correctional facility after being incarcerated for approximately three and a half months, and Judge Jubelirer issued an order directing the Department of Corrections to recalculate his parole to include credit for the time served in the facility. However, Mr. Hardy claims that he still has not received credit for the time he was imprisoned and is currently still on parole.

In November 2022, Mr. Hardy initially filed a complaint against the Board Defendants and the Department of Corrections ("DOC") officials, with the former later submitting a motion to dismiss the complaint. In January 2023, Mr. Hardy filed an amended complaint, which is the subject of the pending Motions to Dismiss from both the Board Officer and DOC Defendants.

## LEGAL STANDARD

When evaluating a Rule 12(b)(6) motion to dismiss, the court may only rely on the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court is required to accept the allegations presented in the complaint as true. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). The complaint should be construed in a light most favorable to the plaintiff, and the Court must

assess whether, based on any reasonable interpretation of the pleadings, the plaintiff may have a valid claim for relief. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665-66 (3d. Cir. 1988).

## DISCUSSION

Section 1983 provides a cause of action against "every person who," under the color of state law, "subjects, or causes to be subjected," another person to suffer a deprivation of a federally protected right. 42. U.S.C. § 1983. A key requirement of a Section 1983 claim is that the defendant "must have personal involvement in the alleged wrongs." *Christmann v. Link*, 532 F. Supp. 3d 263, 269 (E.D. Pa. 2021) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014)). Thus, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* (citation omitted).

Regarding the personal involvement requirement, the Third Circuit has recognized only two theories of supervisory liability. *Id.* at 269-70 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F. 3d 572, 586 (3d Cir. 2004)). First, supervisors can be held liable under § 1983 if it can be demonstrated that they established and maintained a policy, practice, or custom that directly caused the violation of constitutional rights with deliberate indifference to the consequences. *Id.* (quoting *Luzerne Cnty.*, 372 F.3d at 586). Second, supervisors can be held liable if they themselves participated in violating the plaintiff's rights, directed others to violate them, or if the supervisor, as the person in charge, had knowledge of the violations committed by his or her subordinates and acquiesced to him or her. *Id.* (quoting same).

### I. Liability of Members of the Pennsylvania Parole Board

Mr. Hardy alleges that the Parole Board Member defendants are liable under the first *Luzerne County* theory for their failure to implement three crucial policies that would have prevented the violation of Mr. Hardy's rights. These policies include (1) ensuring that citizens are not unlawfully arrested and incarcerated by subordinate Parole Board personnel, in light of the

4

known and unreasonable risk of violating their federal rights; (2) ensuring that reincarcerations are carried out through a valid process; and (3) implementing a procedure for parolees who have been unlawfully arrested to challenge their reincarceration.

The wrongs alleged in Mr. Hardy's Amended Complaint do not stem from an existing policy but rather from a failure to implement a policy. Thus, the alleged wrongdoing is more akin to a failure-to-supervise situation, and a failure-to-supervise theory is "generally considered a subcategory of policy or practice liability." *Christmann,* 532 F. Supp. 3d at 270 (quoting *Barkes,* 766 F. 3d at 316). The Court of Appeals for the Third Circuit has developed a four-part test for determining whether an official may be held liable for a failure to supervise. The test requires that the plaintiff:

> [I]dentify a supervisory policy or practice that the supervisor failed to employ, and then prove that (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Id.* (citing *Sample v. Diecks*, 885 F. 2d 1099, 1118 (3d. Cir. 1989)).

In cases of supervisory liability, the presence of an unreasonable risk is typically established by providing evidence of multiple occurrences of harm. *Sample*, 885 F. 2d at 1118. In cases where the risk of a constitutional violation is not readily apparent based on the nature of the activity, the existence of a pattern of similar constitutional violations can likewise serve as evidence suggesting that policymakers were aware of the risk and displayed deliberate indifference in overseeing their subordinates. *Id.*

In contrast to police activity involving deadly force, sentence calculation does not inherently present an obvious risk of constitutional harm that would automatically justify findings of unreasonable risk, knowledge of the risk, and indifference by supervisory officials to the risk.

5

*Id.* (citing *City of Canton v. Harris*, 498 U.S. 378, 398 (1989)). Therefore, for Mr. Hardy's claim to be sufficiently pled, he must allege a consistent pattern of constitutional violations to satisfy the unreasonable risk and deliberate indifference prongs. *See id.* His argument that the Parole Board was only aware of inaccuracies in the time sheets, as testified by Ms. Sheffield, without acknowledging the potential for harm, fails to satisfy these requirements.

Mr. Hardy presents evidence of one prior instance of a similar alleged constitutional violation. In *Pergolini v. Pennsylvania Board of Probation & Parole*, it was revealed that the Parole Board had erroneously extended an inmate's maximum sentence date by over four months, requiring the intervention of the inmate's private attorney to rectify the mistake. No. 504 C.D. 2019, 2020 WL 133036, at *2 (Pa. Commw. Ct. Jan. 13, 2020). However, this specific issue was not the primary focus of the court's review in *Pergolini*, and the inmate was neither reincarcerated nor imprisoned for a period of time longer than his actual sentence. *See id.* (holding that the court had to first address the issue of waiver and then discussing that Mr. Pergolini did not "expressly or impliedly attack either the Board's denial of street time credit itself or the sufficiency of its explanation for its denial"). The court primarily examined the Board's denial of street credit and eventually determined that the inmate had received adequate review of this decision through the Board's administrative processes. *Id.* at *2-3.

The Board Defendants highlight the distinctions between *Pergolini* and this case. In *Pergolini*, the sentence calculation error there pertained to the maximum sentence, *id.* at *2, whereas the error in Mr. Hardy's case pertained to his *minimum* sentence. And a *minimum* sentence is "the minimum term imposed on a prison sentence [that] merely sets the date prior to which a prisoner may not be paroled." *Rummings v. Pa. Bd. Of Probation & Parole*, 814 A.2d 795, 799 (Pa. Cmwlth. 2002). In light of these distinctions, *Pergolini* is improper. Thus, Mr. Hardy has

6

failed to allege that the Board Officer Defendants were aware of the unreasonable risk of reincarceration based on minimum sentence errors and that they acted with deliberate indifference towards those known risks.

## II. Sufficiency of Allegations Against Secretary Wetzel

Mr. Hardy claims that Secretary Wetzel is liable under the first *Luzerne County* theory for the Secretary's failure to implement policies that would ensure that parolees were not being unlawfully reincarcerated within the Department of Corrections system. As problematic as the impact of this has been on Mr. Hardy personally, Mr. Hardy's claim, as pled, fails again for failure to allege a pattern of constitutional violation. In the Amended Complaint, Mr. Hardy does not identify any other instances within the Department of Corrections system where inaccurate time sheets caused an individual to undergo unlawful incarceration. In fact, Mr. Hardy's claim against Secretary Wetzel is weaker than the claim against the Board Officer Defendants because Mr. Hardy does allege any facts to support the claim that these officials were even aware of inaccuracies of the inaccurate time sheets. Therefore, Mr. Hardy has not asserted a proper actionable claim against Secretary Wetzel under the first *Luzerne County* theory of supervisory liability.

## III. Sufficiency of Allegations Against Superintendent McGinley

Mr. Hardy claims that Superintendent McGinley is liable under the first *Luzerne County* theory for his failure to implement policies that would ensure that parolees were not being unlawfully reincarcerated at SCI-Coal Township. Mr. Hardy's claim against the Superintendent fails for the same reason that his claims against the Secretary fail. He has not alleged any instances where inaccurate time sheets resulted in an individual's unlawful reincarceration in the Amended

Complaint. Thus, he has not alleged a pattern of similar constitutional violations that could indicate awareness of unlawful incarcerations or deliberate indifference to those risks.

Mr. Hardy also asserts that Superintendent McGinley is liable under the second *Luzerne County* theory for having knowledge of and acquiescing to his unlawful imprisonment. A plaintiff asserting a failure to supervise claim under the second *Luzerne County* theory must not only identify a specific supervisory practice that the defendant failed to employ, but he or she must also allege "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *C.H. ex rel. Z.H. v. Oliva*, 226 F 3d. 198, 202 (3d Cir. 2000).

Asserting generally that a warden was notified of a problem but failed to take appropriate measures is insufficient to establish the personal involvement required in alleging a Section 1983 claim. *See Sears v. McCoy*, No. 1:17-cv-869, 2017 WL 4012658, at *3 (M.D. Pa. Sept. 12, 2017) (holding that "the filing of a grievance, participation in 'after-the-fact' review of a grievance, or dissatisfaction with the response to an inmate's grievance does not establish the involvement of officials and administrators in any underlying constitutional deprivation"); *see also Greenwaldt v. Coughlin*, 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."). Specifically in cases where a warden is made aware of a sentence calculation issue, the warden's failure to address such an issue cannot be considered deliberate indifference where there are established procedures in place for others to handle such matters. *Sample*, 885 F. 2d at 1110.

8

Mr. Hardy claims he notified Superintendent McGinley in writing about the unlawful imprisonment and argues that the Superintendent's failure to rectify the issue constitutes deliberate indifference. The notification alone does not confer liability, and Mr. Hardy does not allege that Superintendent McGinley was solely responsible or had exclusive authority to rectify the sentence miscalculation. As a result, Mr. Hardy cannot demonstrate that neither the Superintendent's knowledge of the incident nor acquiescence to it sufficiently states a claim under a supervisory liability theory.

## CONCLUSION

For the foregoing reasons, as certainly regrettable as Mr. Hardy's experience was, based on the pleading that the Court must consider as written, the Court grants the Motions to Dismiss, though Mr. Hardy may submit a second amended complaint to try to correct the insufficiencies noted in this memorandum.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE